UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW DOBEK, #537038,

        Petitioner,

                                          CASE NO. 2:08-CV-13968
v.                                    HONORABLE VICTORIA A. ROBERTS

MARY BERGHUIS,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS BUT GRANTING A CERTIFICATE OF APPEALABILITY**

**I.    Introduction**

Michigan prisoner Andrew Dobek ("Petitioner"), through counsel, has filed a pro se

petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging his 2005 Livingston

County Circuit Court convictions on five counts of first-degree criminal sexual conduct ("CSC

1"), MICH. COMP. LAWS § 750.520b(1)(a), three counts of second-degree criminal sexual conduct

("CSC 2"), MICH. COMP. LAWS § 750.520c(1)(a), and two counts of assault with intent to

commit criminal sexual conduct, MICH. COMP. LAWS § 750.520g(1).  Petitioner was sentenced to

concurrent terms of 25 to 40 years imprisonment on the CSC 1 convictions, concurrent terms of

10 to 15 years imprisonment on the CSC 2 convictions, and concurrent terms of 6 to 10 years on

the assault convictions.

In his pleadings, Petitioner raises several claims of prosecutorial misconduct.  The Court

concludes that Petitioner is not entitled to federal habeas relief and denies the petition.  However,

1

the Court grants Petitioner a certificate of appealability on his habeas claims.

## II.    Facts and Procedural History

Petitioner's convictions arise from the sexual assault of his stepdaughter at their home in

Howell, Michigan in 1995.  The Michigan Court of Appeals provided a factual overview of the

case, which is presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753,

758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

> All the convictions arise out of allegations by defendant's stepdaughter
> concerning improper and illegal sexual conduct by defendant that occurred in
> 1995 when the victim was 12 years old.  She was 22 years old when trial took
> place in May of 2005.  Although there were ten specific criminal counts charged
> against defendant, the complainant testified that defendant sexually molested her
> hundreds of times over the years between, roughly, the ages of 8 and 13.  The
> charged offenses occurred in the Dobek family home during two separate
> incidents on different dates, the first in defendant's bedroom and the second in the
> kitchen.  The sexual conduct involved attempted vaginal and anal intercourse,
> fellatio, cunnilingus, digital penetration of the victim's vagina, genital fondling,
> and, in general, inappropriate touching.
>
> The prosecution presented the testimony of the victim, a police officer who
> initially took the victim's statement, and Detective Bruce Leach, who extensively
> interviewed the victim and handled the investigation of the case.  Defendant
> presented the testimony of his wife,[FN1] his brother, two adult daughters, a
> physician who saw the victim in 2000, defendant's ex-wife, and defendant's
> sister-in-law, who was declared a hostile witness.  Defendant himself also took
> the stand.  He denied any sexual misconduct, and defendant's witnesses, in
> general, testified that they never observed any inappropriate behavior on
> defendant's part and testified to defendant's good character.  On rebuttal, the
> prosecution presented the testimony of a former family babysitter.  Defendant was
> convicted and sentenced to 25 to 40 years imprisonment for the CSC I
> convictions, 10 to 15 years imprisonment for the CSC II convictions, and 6 to 10
> years imprisonment for the sexual assault convictions, all sentences to be served
> concurrently.
>
> FN1.  She is the victim's mother.

*People v. Dobek*, 274 Mich. App. 58, 62-63, 732 N.W.2d 546 (2007).

Petitioner filed an appeal of right with the Michigan Court of Appeals raising several

claims of error, including those presented on habeas review.  The court affirmed his convictions.
*Id*. at 107.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court,
which was denied.  *People v. Dobek*, 480 Mich. 897, 738 N.W.2d 763 (2007).

Petitioner thereafter filed this habeas petition, asserting that the prosecutor engaged in
misconduct by:  (1) personally vouching for the victim's credibility, (2) personally assuring that
the defense witnesses were unworthy of belief, (3) denigrating defense counsel and disparaging
the defense case, (4) improperly questioning Petitioner about his religion, and (5) presenting the
officer-in-charge as a human lie detector.  Petitioner asserts that the prosecutor's conduct
violated his due process rights and deprived him of a fair trial.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28
U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his habeas petition after the
AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA
provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable
>        application of, clearly established Federal law, as determined by the
>        Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination
>        of the facts in light of the evidence presented in the State court
>        proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

3

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, _ U.S. _, _ S. Ct. _, 2011 WL 148587, *11 (Jan. 19, 2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75

(2003).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories

supported or . . . could have supported, the state court's decision; and then it must ask whether it

is possible fairminded jurists could disagree that those arguments or theories are inconsistent

with the holding in a prior decision" of the Supreme Court.  *Id.*  Thus, in order to obtain habeas

relief in federal court, a state prisoner must show that the state court's rejection of his claim

"was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id.*

      Section 2254(d)(1) limits a federal habeas court's review to a determination of whether

the state court's decision comports with clearly established federal law as determined by the

Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412;

*see also Knowles v. Mirzayance*, _ U.S. _, _, 129 S. Ct. 1411, 1419 (2009) (noting that the

Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of

clearly established Federal law' for a state court to decline to apply a specific legal rule that has

not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120,

125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d)

"does not require a state court to give reasons before its decision can be deemed to have been

'adjudicated on the merits.'"  *Harrington*, slip op. at *10.  Furthermore, it "does not require

citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision

contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

While the requirements of "clearly established law" are to be determined solely by Supreme

Court precedent, the decisions of lower federal courts may be useful in assessing the

reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488,

493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v.*

*Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas

review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear

and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Discussion**

> **A.    Procedural Default of Certain Claims**

As an initial matter, Respondent asserts that all but one of Petitioner's prosecutorial

misconduct claims concerning closing argument and his prosecutorial misconduct claim

concerning Howell Police Detective Bruce Leach's testimony are barred by procedural default

because Petitioner waived those claims and/or failed to properly object during trial.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to

the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433

U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of

procedural default is applicable when a petitioner fails to comply with a state procedural rule,

the rule is actually relied upon by the state courts, and the procedural rule is "adequate and

independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v.*

*Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir.

2001).  "A procedural default does not bar consideration of a federal claim on either direct or

habeas review unless the last state court rendering a judgment in the case 'clearly and

expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S.

255, 263-64 (1989). The last *explained* state court judgment should be used to make this

determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on these claims. In denying relief on all but one of the claims concerning closing arguments,[1] the court relied upon defense counsel's failure to object and to contest the disputed remarks when he moved for a mistrial based upon prosecutorial misconduct. *See Dobek*, 274 Mich. App. at 64-66 (ruling that Petitioner "affirmatively and intentionally abandoned or relinquished, with one exception, any claims of prosecutorial misconduct arising out of the prosecutor's closing argument when [he] asserted 'closing argument' misconduct in the mistrial motion, cited prosecutorial comments not at issue on appeal, and then expressly stated that there were no further claims.). The court also relied upon defense counsel's failure to object in denying relief on Petitioner's claim concerning Detective Leach's testimony. *Id.* at 71. Such waiver and/or failure to object is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carter*, 462 Mich. 206, 215, 612 N.W.2d 144 (2000); *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of

---

[1]The record reveals that defense counsel objected to the prosecutor's remarks about her 18 years of experience and claimed that she was improperly vouching for the victim. Defense counsel also objected to the prosecutor's remarks which he believed were shifting the burden of proof. Defense counsel did not object to the prosecutor's remarks about the credibility of defense witnesses or defense counsel.

state procedural default rules.  *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  The Michigan Court of Appeals denied these claims based upon a procedural default – waiver and/or the failure to object at trial.

Petitioner asserts that he did not affirmatively waive all other instances of prosecutorial misconduct by basing his mistrial motion on certain conduct, but acknowledges that he did not object to the challenged closing arguments at trial.  Thus, for purposes of habeas review, Petitioner has procedurally defaulted his prosecutorial misconduct claims concerning closing arguments, other than the vouching argument specifically objected to during trial, as well as his claim concerning Detective Leach's testimony.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner must present a substantial reason to excuse the default.  *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988).  Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available.  *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner neither alleges nor establishes cause to excuse his procedural default. The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000). Nonetheless, the Court notes that Petitioner cannot establish prejudice, since the prosecutorial misconduct claims concerning closing argument lack merit for the reasons stated by the Michigan Court of Appeals in reviewing them for plain error, s*ee Dobek*, 274 Mich. App. at 66-68, 71, and as discussed more fully *infra*.

Petitioner has also not shown that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. These claims are barred by procedural default, lack merit, and do not warrant habeas relief.

### B.      Merits of Prosecutorial Misconduct Claims

Petitioner asserts that he is entitled to habeas relief due to prosecutorial misconduct which violated his due process rights and deprived him of a fair trial. The United States Supreme Court stated that prosecutors must "refrain from improper methods calculated to

9

produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail

on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the

prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a

denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit  adopted a two-part test for

determining whether prosecutorial misconduct violates a defendant's due process rights.  *See*

*Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must

determine whether the challenged statements were indeed improper.  *Id*. at 452.  Upon a finding

of impropriety, the court must decide whether the statements were flagrant.  *Id.*  Flagrancy is

determined by an examination of four factors:  1) whether the statements tended to mislead the

jury or prejudice the accused; 2) whether the statements were isolated or among a series of

improper statements; 3) whether the statements were deliberately or accidentally before the

jury; and 4) the total strength of the evidence against the accused.  *Id.*; *see also Slagle v. Bagley*,

457 F.3d 501, 515-16 (6th Cir. 2006); *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)

(citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)).  "[T]o constitute the

denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it

permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the

defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner first asserts that the prosecutor committed misconduct by personally vouching

for the victim's credibility.  Specifically, Petitioner objects to the prosecutor's use of the

phrases "trust me" and "I'm here to tell you" when discussing the victim's testimony and

credibility, the prosecutor's remark that the victim had not been coached, and the prosecutor's

statement that she is "bound to follow the law" and her reference to her 18 years of experience in prosecuting child sexual abuse cases.

It is well-settled that it is improper for a prosecutor to express his or her own personal opinions as to a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *Young*, 470 U.S. at 18-19; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008); *see also Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010) (citing cases).

The Michigan Court of Appeals denied relief on this claim, finding that the claims of improper vouching lacked merit and there was no prosecutorial misconduct. The court explained that the prosecution has "wide latitude" to argue the facts and reasonable inferences and ruled that "the challenged comments reflected arguments from the facts and testimony that the witnesses at issue were credible or worthy of belief....The prosecutor did not imply that she had some special knowledge that the witnesses were testifying truthfully." *Dobek*, 274 Mich. App. at 66. The court further found that the prosecutor's remarks regarding the status of the case and her experiences as a prosecutor were "appropriately responsive to defendant's closing comments, . . . did not constitute plain error affecting substantial rights, . . . were harmless, lacking prejudicial effect, . . . or could have been cured with a timely instruction." *Id*. at 67

11

(citations omitted).

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecutor did not improperly vouch for the victim (or other prosecution witnesses). A review of the record reveals that the prosecutor based her arguments on the testimony and argued from the evidence that the victim was credible and should be believed. A prosecutor has leeway to argue the evidence and reasonable inferences therefrom. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor's use of the phrases "trust me" and "I'm here to tell you" were introductory to her remarks on the victim's testimony and why the jury should find her credible. The prosecutor did not improperly vouch for the victim or imply that she had knowledge of facts which were not presented to the jury.

Furthermore, the prosecutor's remark that the victim had not been coached was made in response to defense claims that the victim was lying and was unable to recall events accurately. The prosecutor's statement that she is "bound to follow the law" and her reference to her 18 years of experience were made in response to defense arguments about the unfairness of the delay in prosecution and the quality of the evidence at trial. When considered in context, such comments can reasonably be viewed as proper rebuttal. Petitioner failed to establish that the prosecutor improperly vouched for the victim (or other prosecution witnesses) or that any such comments rendered the trial fundamentally unfair. Habeas relief is not warranted.

Petitioner also asserts that the prosecutor engaged in misconduct by personally assuring that the defense witnesses were unworthy of belief. Specifically, Petitioner contests the

12

prosecutor's remark that the testimony of Kathleen Dobek, Petitioner's wife and the victim's mother, was "worthless" and her argument that "Kathleen Dobek would rather have the defendant in her home, in her bed, than her own child in her home.  And so I submit to you that she – I would not believe a word that she says."

As noted, it is inappropriate for a prosecutor to express a personal opinion as to a defendant's guilt or a witness's credibility.  *See Young*, 470 U.S. at 9-10; *Hurley*, 426 F.3d at 378; *Modena*, 302 F.3d at 634.  However, a prosecutor may argue from the facts that a witness, including a defense witness or a testifying defendant, is or is not worthy of belief.  *See Portuondo*, 529 U.S. at 69; *Cristini*, 526 F.3d at 901-02.

The Michigan Court of Appeals denied relief on this claim stating, in relevant part, that the prosecutor "was permitted to argue from the facts that defendant's witnesses were unworthy of belief."  *Dobek*, 274 Mich. App. at 67.  This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  As noted, a prosecutor has leeway to argue reasonable inferences from the evidence, *see Byrd*, 209 F.3d at 535, and to argue from the facts that a witness is or is not worthy of belief.  *See Portuondo*, 529 U.S. at 69.  The prosecutor did just that.  While her use of the phrase "I would not believe a word that she says" could be seen as improper when viewed out of context, it can reasonably be seen as a request for the jury to discredit the witness's testimony based upon the facts and circumstances of the case when viewed in context.  The prosecutor based her credibility arguments on the trial testimony and did not imply that she had special knowledge of facts not presented to the jury.  While perhaps inartfully-worded, the argument was appropriate under the circumstances.  Habeas relief is not warranted.

13

Petitioner also asserts that the prosecutor engaged in misconduct by denigrating defense counsel and disparaging the defense case. In particular, Petitioner challenges the prosecutor's comments that Petitioner had difficulty testifying when he "wasn't on script and talking to his lawyers," the prosecutor's statement that defense counsel objected to questions and took other actions "in an effort to try and cover up the truth," to be "sneaky," and to create reasonable doubt, and the prosecutor's references to defense "red herrings" during closing argument.

It is well-established that it is inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel. *See United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). Prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), "or argue that counsel is attempting to mislead the jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008). Prosecutors may, however, highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), point out the lack of evidence supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005), and argue from the facts that a defense witness, including a testifying defendant, is not worthy of belief. *See Portuondo*, 529 U.S. at 69; *Christini*, 526 F.3d at 901-02. Moreover, a prosecutor's description of a defense argument as a red herring, a smoke screen, or a distraction is not per se improper. *See United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir. 2002); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992).

The Michigan Court of Appeals denied relief on this claim, finding that nothing was stated which required reversal, and that Petitioner had not shown plain error affecting his substantial rights:

14

> While the prosecutor was aggressive and arguably crossed the line with some of her remarks, other remarks were valid commentary based on the evidence and testimony and inferences arising therefrom. The prosecutor was permitted to argue from the facts that defendant or defendant's witnesses were unworthy of belief. *Howard, supra* at 548, 575 NW2d 16. The prosecutor's designation of defense counsel's arguments as "red herrings" did not generate the type of accusatory prejudice decried in *People v. Dalessandro*, 165 Mich App 569, 579-580, 419 NW2d 609 (1988). Therefore, defendant's reliance on *Dalessandro* is misplaced. Although the prosecutor's comments might have suggested that defense counsel was trying to distract the jury from the truth, the comments were, in general, properly made in response to defense counsel's suggestion that the prosecutor failed to recognize evidence that was allegedly problematic to the prosecution's theory. *See Watson, supra* at 592-593, 629 NW2d 411 (similarly rejecting a defendant's claim that reversal was warranted on the basis of "red herring" statements made by the prosecutor). Moreover, assuming some of the prosecutor's comments were improper, any prejudicial effect could have been cured by a timely instruction, and, therefore, reversal is unwarranted.

*Dobek*, 274 Mich. App. at 67-68.

This decision is not contrary to Supreme Court precedent, and it is not an unreasonable application of it. The prosecutor's comments on Petitioner's credibility and conduct were based upon his testimony and demeanor at trial, and were fair game given that he testified in his own defense. The prosecutor argued that Petitioner and defense witnesses were not worthy of belief based upon the facts. Similarly, the prosecution did not err by challenging the credibility of other defense witnesses or using the term "red herring" to highlight flaws in the defense theory of the case – particularly where such arguments were derived from the trial testimony and were made in response to defense arguments about the quality of the prosecution's case. *See, e.g., Ratajczak v. Romanowski*, No. 2:08-CV-10102, 2010 WL 2232340, *16 (E.D. Mich. June 2, 2010) (denying relief on similar claim).

As the Michigan Court of Appeals seems to have acknowledged, some of the prosecutor's criticisms of defense counsel crossed the line of propriety. In particular, this Court

15

is troubled by the prosecutor's assertion that defense counsel was trying to cover up the truth and mislead the jury.  To the extent that those comments constituted personal attacks on defense counsel and his integrity, they were clearly improper.  *See, e.g., West*, 550 F.3d at 565; *accord United States v. Holmes*, 413 F.3d 770, 775 (8th Cir. 2005).  When reviewed in the context of the entire closing arguments and the trial as a whole, however, such remarks were not so pervasive or flagrant that they denied Petitioner a fundamentally fair trial.  This Court does not condone such remarks by the prosecutor, and may have decided the issue differently if the case were on direct appeal. However, the Court cannot conclude that the Michigan Court of Appeals' denial of relief was unreasonable, given the deference due state court rulings under the AEDPA.

Moreover, as noted by the Michigan Court of Appeals, *see Dobek*, 274 Mich. App. at 66 n. 3, the potential prejudice arising from any improper closing remarks by the prosecutor was mitigated by the trial court's jury instructions that the attorneys' comments were not evidence, that Petitioner was innocent until proven guilty, that the jurors were responsible for deciding witness credibility, and that they should only consider the evidence presented at trial in rendering a verdict.  Jurors are presumed to following the trial court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors...take an oath to follow the law as charged, and they are expected to follow it.").  Petitioner has not shown that any improper prosecutorial remarks rendered his trial fundamentally unfair.  Habeas relief is not warranted.

Petitioner also asserts that the prosecutor engaged in misconduct by improperly questioning him about his religion.  Defense counsel first broached the subject of religion by eliciting testimony from Petitioner that the victim could have sought guidance from a priest if

16

she was subject to sexual abuse or had other problems.  On cross-examination, the prosecution

responded by asking Petitioner whether his conduct was consistent with his faith.  The

Michigan Court of Appeals described the situation:

> On direct examination by defense counsel, defendant testified as follows:
>
> So I-but also the kids are Catholic and [my wife] is. We go to church. They were
> brought up with-in the Catholic faith. They went to catechism. They learned all
> their sacraments and received 'em all.
>
> Therefore, defendant first introduced faith and religion into the trial. On
> cross-examination, the prosecutor asked defendant whether he was a practicing
> Catholic and whether he was a member of a Catholic Church in the 1990s, to
> which defendant replied in the affirmative. The prosecutor next asked defendant
> whether his behavior was consistent with the tenets of the Catholic faith;
> however, before defendant could answer, defense counsel objected, and the trial
> court sustained the objection, ordering the prosecutor to stop pursuing the
> religious line of questioning. That was the last inquiry into religion.

*Dobek*, 274 Mich. App. at 72-73.

It is generally improper for a prosecutor to question a witness or a testifying defendant

about his or her religious beliefs.  Under Michigan law, a prosecutor may not generally inquire

into a witness's religious beliefs.  *See* MICH. COMP. LAWS § 600.1436; *People v. Bouchee*, 400

Mich. 253, 262, 253 N.W.2d 626 (1977); *see also* MICH. R. EVID. 610 ("Evidence of the beliefs

or opinions of a witness on matters of religion is not admissible for the purpose of showing that

by reason of their nature the witness's credibility is impaired or enhanced.").  Similarly, it can

be improper under federal law for a prosecutor to inquire into a witness's or criminal defendant's

religious beliefs.  *See, e.g., United States v. Cartagena-Carrasquillo*, 70 F.3d 706, 713 (1st Cir.

1995).  However, not all questions about religion or personal beliefs are improper under state or

federal law.  Such an inquiry is appropriate when relevant and probative of an issue in a

criminal prosecution.  *See, e.g., People v. Calloway*, 180 Mich. App. 295, 298, 446 N.W.2d 870

17

(1989); *United States v. Beasley*, 72 F.3d 1518, 1527 (11th Cir. 1996).

The Michigan Court of Appeals acknowledged that questioning a witness about religious beliefs is improper, but denied relief, finding that defense counsel opened the door on religion, that the prosecutor responded in good faith, and that the trial court properly halted the questioning such that Petitioner was not prejudiced. The court explained:

> Here the prosecutor attempted to inquire about defendant's Catholic beliefs in order to show that the beliefs were inconsistent with his behavior; however, the trial court ended the questioning, and thus the only information elicited by the prosecutor was that defendant was a member of a Catholic church in the 1990s and practiced his faith. This is no more than, and is indeed less than, that which was divulged to the jury on direct examination of defendant by his counsel. In the context of prosecutorial misconduct, it would appear that the prosecutor was proceeding in good faith, given that defendant had opened the door on the issue; however, the case law does not support the road down which the prosecutor was heading. Regardless, in light of the trial court's wisdom in swiftly and commendably stopping the religious line of questioning, we cannot conclude that defendant was denied a fair and impartial trial or that reversal is necessary. Moreover, the content or substance of defendant's Catholic beliefs was never explored, and thus reversal is unwarranted.

*Dobek*, 274 Mich. App. at 75-76.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. While the prosecutor's questions about Petitioner's religious beliefs were likely improper, they were conceivably made in good faith in response to defense counsel's prior examination of Petitioner. More importantly, however, the trial court promptly put an end to the inquiry before prejudicial comments were made, and the parties did not further discuss Petitioner's religious beliefs. Given such circumstances, Petitioner cannot establish that he was prejudiced by the prosecutor's conduct or that he was deprived of a fundamentally fair trial. Habeas relief is not warranted.

Lastly, Petitioner asserts that the prosecutor engaged in misconduct by presenting the

18

officer-in-charge, Detective Leach, as a human lie detector to bolster the victim's credibility. In particular, Petitioner objects to Leach's testimony regarding his investigative techniques and the victim's demeanor and Leach's statements on re-direct examination that he had "no concerns about lying" and that he submitted arrest warrants for Petitioner to the prosecutor's office.

Under Michigan law, it is generally improper for an expert or lay witness to offer an opinion on the credibility of another witness because it is for the jury to determine such matters. *See, e.g., People v. Peterson*, 450 Mich. 349, 352, 537 N.W.2d 857 (1995); *People v. Buckey*, 424 Mich. 1, 17, 378 N.W.2d 432 (1985). The Michigan Court of Appeals denied relief on this claim:

> Again, this issue is as much an evidentiary issue as it is a prosecutorial misconduct matter; therefore, we focus on whether the prosecutor elicited the testimony in good faith. *Noble, supra* at 660, 608 NW2d 123. It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury. *People v. Buckey*, 424 Mich 1, 17, 378 NW2d 432 (1985); *People v. Smith*, 158 Mich App 220, 230-231, 405 NW2d 156 (1987). An expert may not vouch for the veracity of a victim. *People v. Peterson*, 450 Mich 349, 352, 537 NW2d 857 (1995), *mod* 450 Mich 1212, 548 NW2d 625 (1995). Leach testified about his background and experience, the manner in which to properly investigate and interview subjects in criminal sexual conduct cases, his interview of the victim and her demeanor, and delayed disclosure in criminal sexual conduct cases. Only after defense counsel delved into " deception" issues on cross-examination of the detective [FN5] did Leach testify on redirect that he had no concerns about lying in this case. Defendant did not object to this testimony, nor to the prosecutor's question that elicited the testimony. Assuming plain error, defendant has not established prejudice, actual innocence, or damage to the integrity of the judicial proceedings. *Carines, supra* at 763, 597 NW2d 130. Given that Leach was called as a witness by the prosecutor and that a criminal prosecution against defendant was pursued, the jurors surely understood that Leach believed that the victim was telling the truth even without the disputed testimony. Regardless, we cannot conclude that the prosecutor proceeded with the questioning and elicited the testimony in bad faith, especially considering that defendant opened the door on the matter.
>
> FN5. After Leach acknowledged that the victim appeared uncomfortable,

> defense counsel asked Leach if, on the basis of his 31 years of police work,
> people who tell "untrue" things sometimes appear uncomfortable, to which
> Leach replied, "Sure."

*Dobek*, 274 Mich. App. at 70-71.

This decision is neither contrary to Supreme Court precedent, nor an unreasonable application of it. Detective Leach's testimony about the criminal investigation and Petitioner's arrest was relevant and admissible under state law. His description of the victim's demeanor and her actions during the course of the investigation were appropriate to assist the jurors in understanding the events leading to trial and in making their own credibility determinations. *See, e.g., Bixler v. Bell*, No. 06-CV-11781, 2007 WL 4570073, *4 (E.D. Mich. Dec. 26, 2007) (denying relief on similar claim stating that "the trial transcript does not indicate improper vouching, but rather the elicitation of testimony from an individual who is experienced in assessing whether or not a person is a victim of sexual assault").

Detective Leach's specific comment that he had "no concerns about lying" in this case, while perhaps inappropriate, was isolated, was not misleading, and was made in response to defense counsel's inquiry into deception. Furthermore, Petitioner cannot establish prejudice arising from this testimony. The jurors' common sense would lead them to think that the authorities believed that the victim was telling the truth given that Petitioner was criminally prosecuted. In any event, to the extent that Leach's testimony regarding the victim's credibility was improper, it was offered in good faith and was not so flagrant as to deprive Petitioner of a fundamentally fair trial. Habeas relief is not warranted.

## V.      Conclusion

The Court concludes that Petitioner is not entitled to federal habeas relief on the claims

20

contained in his petition.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability ("COA") must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims.  *Id*. at 336-37.

When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

While the Court believes that Petitioner is not entitled to habeas relief, the Court nonetheless finds that he makes a substantial showing of the denial of a constitutional right on all of his claims, and that reasonable jurists could debate the correctness of the Court's procedural ruling.  Petitioner's claims present constitutional issues worthy of appellate review.

21

Therefore, the Court **GRANTS** a certificate of appealability.

        **IT IS ORDERED.**

                                          S/Victoria A. Roberts
                                          Victoria A. Roberts
                                          United States District Judge

Dated:  February 25, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 25, 2011.

    s/Carol A. Pinegar
Deputy Clerk

---

22